No. 1:24-cv-03143 CRC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ARTHUR S. WEST,<br><br>                Plaintiff,<br><br>Vs.<br><br>NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, WASHINGTON STATE DEPARTMENT OF ENTERPRISE SERVICES, VIA DIRECTOR MATT SMITH, STATE OF WASHINGTON, VIA GOVERNOR ROBERT FERGUSON, THE UNITED STATES ARMY CORPS OF ENGINEERS, THE UNITED STATES DEPARTMENT OF COMMERCE, WASHINGTON STATE DEPARTMENT OF ECOLOGY VIA DIRECTOR CASEY SIXKILLER,<br><br>                Defendants. | **Case No. 1:24-cv-03143 CRC**<br><br><br>**PLAINTIFF WEST'S 2nd AMENDED, VERIFIED NEPA COMPLAINT** |

## I. INTRODUCTION

**1.1.** This action seeks declaratory, injunctive, and other relief under the National Environmental Policy Act ("NEPA"), the Administrative Procedure Act ("APA"), and the Declaratory Judgments Act. It arises from the advancement of the Capitol Lake–Deschutes Estuary Restoration Project and the Budd Inlet Remediation Project, which are inextricably interrelated and, singly and

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**1**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

collectively, constitute a "Major Federal Action" within the meaning of CEQ, NOAA, and Army Corps of Engineers regulations.

**1.2.** Defendants NOAA and the U.S. Army Corps of Engineers have committed federal funds and approvals to this project—including a Cooperative Agreement Grant of approximately $6,437,390—before preparing or supplementing the required Environmental Impact Statement.

**1.3** Defendant Washington State, acting through the Department of Enterprise Services ("DES") and, (more recently, since July 1st, 2025) the Department of Ecology ("DOE"), has exercised lead agency and primary applicant status, controlled and obligated more than $5.9 million of that award, executed Letters of Intent for additional funding, and predetermined the scope, timeline and and sequencing of the project in the absenc of lawful NEPA review.

**1.4.** Plaintiff seeks to compel compliance with NEPA by requiring preparation of a comprehensive Environmental Impact Statement for the entire integrated undertaking, including estuary restoration, toxic sediment remediation, bridge redesign, shoreline alterations, and newly merged flood-protection berm features. Such an EIS must evaluate direct, indirect, and cumulative impacts—

including water quality, toxic sediment disturbance, hydrology, traffic, recreation, economic, and cultural resource impacts—and must consider a full range of reasonable alternatives before irreversible commitments of federal and State resources are made.

1.5.    Plaintiff further seeks declaratory relief to address Defendants' misrepresentations and concealments, including DES's July 7, 2025 Joinder filed in this Court, which denied the State's fiscal role, minimized binding multi-year design commitments as "conceptual," and concealed both the July 1, 2025 budget proviso (§3031) transferring lead-agency authority to DOE and dictating project elements, and DES's concurrent LOI requesting ≈$50.7 million in additional federal/state funds while merging the berm project into the estuary design.

1.6. Plaintiff has standing under Article III of the U.S. Constitution. He has suffered procedural and informational injuries through the denial of NEPA's guaranteed disclosures and participation rights, as well as concrete environmental injuries to his aesthetic, recreational, birdwatching and environmental interests in the Deschutes Estuary and Budd Inlet due to the foreclosure of alternatives in the

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**3**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

defendants' project and the imminent prospect of construction activity under the new project schedules.

**1.6.** These injuries are traceable to Defendants' unlawful commitments of resources and misrepresentations, and are redressable by declaratory and injunctive relief requiring lawful NEPA review before the project proceeds. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 572 n.7 (1992) (procedural rights under NEPA support standing where environmental injury is alleged); Massachusetts v. EPA, 549 U.S. 497, 518 (2007) (injury traceable to agency action and redressable by court order).

## II. JURISDICTION

**2.1.** The jurisdiction of this Court is conferred by and invoked pursuant to federal question jurisdiction under 28 U.S.C. 1331, the Administrative Procedure Act, 5 U.S.C. 702, and 704, and the National Environmental Policy Act, 42 USC 4331, et sequ.

**2.2.** The jurisdiction of this Court in the venue of the District of Columbia is also conferred by and invoked pursuant to 28 U.S.C. 1346 by virtue of the naming of an agency of the U.S. Government as defendant to this action.

**2.3.** This Court has jurisdiction over the parties and subject matter of this claim.

## III. PARTIES

**3.1.** Plaintiff West is a landowner in fee simple of a residential property in Olympia on Berry Street NE, overlooking the Deschutes Estuary Restoration Project and the Bud Bay Dioxin Remediation Sites. West traverses the project site on a daily basis and regularly employs the shoreline area and areas in the vicinity of Budd Inlet for recreation and other activities.

**3.2.** West also owns 100 feet of waterfront property adjacent to the Evergreen State College on Eld Inlet along with approximately an acre of shellfish bearing tidelands. West is, and has been subject to the prospect of imminent and substantial harm from the proposed project, especially if the remediation of toxic waste in Budd inlet is interfered with or delayed by a failure of the defendants to conduct a timely and comprehensive NEPA review.

**3.3.** Plaintiff West has been actively involved with water quality and environmental issues in the Puget Sound region for over 25 years. West, through

litigation, was instrumental in uncovering and publicizing the presence of Dioxin in Budd Inlet that the Port of Olympia attempted to conceal and obscure. West also was the plaintiff in the landmark 9th Circuit NEPA case of West v. Secretary of Transportation, 206 F.3d 920 (9th Cir. 2000), involving the improper use of a Categorical Exemption for infrastructure for a proposed Intel-Weyerhaeuser project in Dupont.

**3.4.** Plaintiff West lives within one mile of, and has aesthetic and recreational interests in, the project site. West regularly traverses the actual project site, frequently walking on the existing trail circumscribing Capitol Lake for exercise and recreation, and driving across the existing 5th Avenue Bridge on a daily basis.

**3.5.** West holds a current salt water fishing license, employs lower Budd inlet for waterborne and water related recreation, and frequents restaurants located on the inlet in the vicinity of the project site. West is specially and particularly impacted by water quality in lower Puget Sound and other environmental conditions that have been and will be harmed by and/or are threatened by the defendants' project, their interference with timely, effective and comprehensive

environmental review under NEPA, and their delay of, and attempt to interfere with and obstruct, by devious means, the necessary remediation of toxic dioxin bearing sediments in Capitol Lake and Budd Inlet.

**3.6.** Plaintiff West has standing in that he has suffered a concrete and particularized injury that is: (1) actual or imminent, (2) caused by or fairly traceable to an act that the litigant challenges in the instant litigation, and (3) redressable by the court." See *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (internal quotation marks and citations omitted), cited in *Fund Democracy, LLC v. Securities & Exchange Securities*, 278 F.3d 21, 25 (D.C. Cir. 2002),  or such lesser standing standard currently prevailing in 9th Circuit precedent.

**3.7.** Defendant National Oceanographic and Atmospheric Administration, (NOAA), is a federal agency required to comply with the laws of the State of Washington, and those of the United States of America, including the National Environmental Policy Act (NEPA).

**3.8.** Defendant Department of Commerce is a federal agency with supervisory administrative jurisdiction over the NOAA, which is required to

comply with the laws of the State of Washington, and those of the United States of America, including the National Environmental Policy Act (NEPA).

**3.9.** Defendant Matt Jones is the ex parte Young "legal fiction" representative of the Washington State Department of Enterprise Services, an agency of the State of Washington.

**3.10.** Defendant U. S. Army Corps of Engineers is a federal agency required to comply with the laws of the State of Washington and those of the United States of America, including the National Environmental Policy Act (NEPA). It is liable for failing to participate in and/or conduct a NEPA analysis of the known and reasonably foreseeable major significant impacts upon its interests of the interrelated Deschutes Estuary Restoration and the Budd Bay Dioxin Remediation projects at the earliest possible time.

**3.11.** Defendant Robert Ferguson is the ex parte Young "legal fiction" representative of the State of Washington.

**3.12.** Defendant Casey Sixkiller is the ex parte Young "legal fiction" representative of the Washington State Department of Ecology, an agency of the State of Washington.

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**8**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**3.13.** The Federal District Court for the District of Columbia has jurisdiction over the parties and subject matter of this claim.

## IV. ALLEGATIONS

**4.1.** This is a case involving defendant NOAA's funding of the *Deschutes Estuary Restoration Project*, an admittedly ***"Monumental"*** undertaking that is, by any rational analysis, undeniably a "Major Federal Action" as defined in the CEQ regulations, with reasonably foreseeable significant impacts subject to mandatory review under NEPA, due to its potential impact on toxic sediment and water quality in Budd Bay, federal funding, presence in and upon federal waters, required federal permitting, its recognized adverse impact on defendant ACOE's interests, and its undeniable interrelation with the ongoing remediation of toxic dioxin bearing sediment in adjacent areas of Budd Bay.

**4.2.** As the map previously filed as Exhibit 1 demonstrates, the area of Budd Inlet adjacent to the project site is heavily contaminated by Dioxin bearing toxic waste.

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**9**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.3.** As the map previously filed as Exhibit 2 demonstrates, the area of Budd inlet adjacent to the project site is a 303(d) listed impaired body of water.

**4.4.** As the Exhibit previously filed as Exhibit 3, an excerpt from a 2007 Final Deschutes Estuary Feasibility Study by Moffat and Nichol, demonstrates, the defendant State of Washington was aware that federal funding was reasonably foreseeable for such a large project, which would require NEPA Review[1], as well as the circumstance that the (then) recent discovery of dioxin bearing sediments in Budd Inlet[2] highlighted the risks associated with dredging in urbanized areas.

**4.5.** The defendant US Army Corps of Engineers (ACOE) has also long known that the proposed estuary restoration project would pose serious adverse impacts to their interests, which would require NEPA review.  A series of Emails between the ACOE and Senaror Fraser in 2015 (See Exhibit 4)  show that defendant ACOE determined that the increased sedimentation in the Federal authorized navigation channel of the Port of Olympia that would result from

---

[1]  See:  2007 Deschutes Estuary Feasibility Study by Moffat and Nichol at page 23:  *"The following list outlines the most likely regulatory and permitting requirements. NEPA: Federal funds may be needed for a project of this magnitude, which would trigger specific NEPA requirements..."*

[2]  See:  2007 Deschutes Estuary Feasibility Study by Moffat and Nichol at page 24: *In particular, the recent discovery of dioxins at the Port of Olympia's dredged navigation channel highlights the risks associated with dredging in urbanized areas.*

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**10**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

removing the dam would cause unacceptable negative impacts to the Corps' operations and maintenance of that channel.

**4.6.** Defendant (ACOE) then stated it could not support a restoration project that would increase costs for its primary responsibility to maintain navigation.  In an email to then State Senator Karen Fraser, Jessica Winkler from the ACOE wrote, "If a non-Federal entity proposed to remove the dam at Deschutes, they would be required to coordinate that proposal with the Corps under our Section 408 permitting process (33 U.S.C. 408)." (See previously filed Exhibit 4)

**4.7.** Despite these circumstances and the prior knowledge of the defendants, DES envisioned that it would enjoy **"***a really cool role"*** in which it would advance the project and make binding and irrevocable decisions in the complete absence of any required comprehensive review under NEPA.

**4.8.** According to Ann Larson, Special Assistant to defendant DES Director Smith, *"The Deschutes Estuary Restoration Project is the largest estuary restoration in an urban setting in the nation*[3]*"* in regard to which the "*DES has a really cool role*".

---

[3]    See:   https://capitol.wa.gov/our-story/news-updates/overview-deschutes-estuary-restoration-project

**4.9.** Unfortunately, this "really cool role" has not been officially perceived by the defendants to include the necessary NEPA review "at the earliest possible time" required under the National Environmental Policy Act, despite defendant DES's own website describes the  project as "Monumental":

> The Department of Enterprise Services (DES) is undertaking a ***monumental*** estuary restoration project in the heart of the Washington State capitol. The Deschutes Estuary Restoration Project will restore 260 acres of estuarine and salt-marsh habitat in South Puget Sound. The estuary is at the mouth of the Deschutes River, on the footsteps of the Washington State Capitol Campus, along the shoreline of downtown Olympia, and within the Usual and Accustomed Fishing Grounds of the Squaxin Island Tribe. The project will remove the 5th Avenue Dam and associated tide gate, which were built in 1951 to make the Deschutes Estuary into a freshwater reflecting pool for the Washington State Capitol Campus. (Emphasis added)

**4.10.** Despite undeniably being aware for over a decade that the restoration of the Deschutes Estuary would inevitably be a "Monumental" Major Federal Action requiring review under NEPA at the earliest possible time, and that it would necessarily implicate the remediation of toxic sediments in Budd Inlet, defendants, and each of them, deliberately flaunted their disregard of the requirements of NEPA, attempted to advance a Major Federal Action through inadequate,

piecemealed analysis, and failed to coordinate with the equally necessary remediation of toxic sediments in Budd Inlet.

**4.11.** In May of 2024, it was reported that defendant NOAA would be awarded a 6.4 Million Dollar Grant[4] to the Squaxin tribe for this "Monumental" project.

**4.12.** On August 31, 2024, NOAA officially awarded the Tribe $6,437,390 under Cooperative Agreement NA24NMFX463C0024. NOAA itself acknowledged that this award carried substantial federal involvement, including NOAA's review of design plans, permitting assistance, and monitoring—all hallmarks of "Major Federal Action."

**4.13.** DES has itself recognized the interrelationship between estuary restoration and Budd Inlet sediment remediation. A Memorandum of Understanding between DES and local governments required that contaminated sediments be remediated before removal of the dam, acknowledging that the two projects must be coordinated. Yet subsequent agreements removed this condition, creating further risk of adverse cumulative effects.

---

[4] See  https://www.theolympian.com/news/local/article288644850.html

**4.14.** The dioxin sediment remediation and the estuary restoration are, beyond reasonable debate, **interrelated Major Federal Actions** that must be assessed together under a joint NEPA EIS.

**4.15.** The project has been impermissibly segmented and advanced before critical conditions and components have been defined. Current documentation is woefully inadequate, and NEPA/SEPA authority has been improperly delegated to private consultants.

**4.16.** Consultant Floyd Snider admitted in selection materials that its modeling would be used to "support Port remedial designs and significantly reduce costs of that project," confirming the underhanded linkage between restoration and remediation.

**4.17.** Neither the estuary project nor the dioxin remediation project qualify for categorical exclusions. Exceptional circumstances bar such treatment.

**4.18.** To the extent defendants have delegated NEPA responsibility to third parties, this is an unlawful delegation under the doctrine of *delegatus non potest delegare* and evidence of impermissible privatization.

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**14**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.19.** Defendants have taken final action in awarding and/or accepting and expending federal funds.

## DES Misrepresentation Allegations

**4.19A.** On July 7, 2025, the Washington State Defendants filed a Joinder in support of the Federal Defendants' Motion to Dismiss in this action. That filing contained multiple misstatements and omissions that concealed the State's true role in funding and steering the Deschutes Estuary Project.

**4.19B.** Specifically, the State asserted that "the NOAA grant is between NOAA and the Squaxin Tribe, not the State," and that the State was "not a party" to the grant. These statements were materially false. The NOAA award of $6,437,390 identified the Washington Department of Enterprise Services ("DES") as the **Primary Applicant**, with DES controlling and obligating approximately $5.9 million (over 90%) of the award. The Tribe's direct and indirect share was approximately $533,000. In practical terms, DES was the primary fiscal actor.

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**15**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.19C.** The State's filing also concealed the fact that Section 3031 of the 2025–26 Capital Budget (SB 5195) had taken effect on July 1, 2025, transferring lead-agency responsibility from DES to the Department of Ecology ("DOE") and dictating substantive project elements and timelines. This was a material governance shift occurring less than a week before the State's filing.

**4.19D.** The State further mischaracterized expenditures under the NOAA award as "conceptual design." In truth, the State's own Budget Narrative documented binding, multi-year commitments: approximately $1.153 million for 30% design, $3 million for 60% restoration design, $500,000 for GC/CM onboarding, $89,595 for a DES grant administrator, and additional funds for permitting, outreach, and communications. These were not "conceptual" but substantive obligations that created the very kind of bureaucratic inertia condemned in *Metcalf v. Daley*, 214 F.3d 1135, 1144–45 (9th Cir. 2000), and *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120–21 (9th Cir. 2005).

**4.19E.** The State's misstatements and concealments prevented the West, the Department of Justice and this Court from being fully apprised of who was truly spending, steering, and predetermining outcomes. NEPA requires full and honest

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**16**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

disclosure of environmental effects and agency commitments at the earliest stage. See *Scientists' Inst. for Pub. Info. v. AEC*, 481 F.2d 1079, 1092 (D.C. Cir. 1973); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

**4.19F.** By providing materially misleading information, downplaying binding design obligations, and concealing Section 3031, the State undermined NEPA's core purpose. Agencies and their representatives may not mislead courts, the public, or federal partners in order to avoid or postpone environmental review.

**4.20.** In 2025, the Washington State Legislature enacted Section 3031 of the 2025–26 Capital Budget (SB 5195), appropriating $14.75 million for the Capitol Lake–Deschutes Estuary Project.

**4.21.** Section 3031 not only appropriated funds but also **transferred primary responsibility for the project from the Department of Enterprise Services (DES) to the Department of Ecology (DOE)** — an agency with very different statutory missions and regulatory authorities. This transfer was accomplished by stealth, through a single budget proviso, without formal legislative hearings or opportunities for affected landowners, Plaintiff, or federal partners to be heard.

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**17**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.22.** The proviso requires DOE to rely on "past reports and studies," to consider existing stakeholder input, and to adopt a phased restoration design limited to certain predefined project elements, while expressly minimizing costs and postponing recreational amenities. By prescribing scope and method through an appropriations rider, Section 3031 attempts to accomplish indirectly what NEPA forbids: a **substantive commitment before environmental review.**

**4.23.** Courts have consistently rejected this type of legislative fiat. Only Congress may alter or displace NEPA — and then only through unmistakably clear statutory language. *Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 361–62 (D.C. Cir. 1981). Attempts to rely on appropriations or budget provisos as de facto exemptions have been repeatedly struck down. *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1431 (9th Cir. 1989); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246–47 (D.C. Cir. 1972).

**4.24.** This stealth, ambush-style proviso is exactly the kind of maneuver condemned by both Circuits. *Scientists' Inst. for Pub. Info. v. AEC*, 481 F.2d 1079, 1092 (D.C. Cir. 1973), stressed that NEPA requires environmental values to be infused into the "very process of decisionmaking," not relegated to after-the-fact

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**18**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

ratification. Likewise, *Calvert Cliffs' Coordinating Comm. v. AEC*, 449 F.2d 1109, 1115 (D.C. Cir. 1971), held that cost or expediency cannot justify stripping NEPA of its mandatory force. And in *Izaak Walton League*, 655 F.2d at 361–62, the D.C. Circuit reaffirmed that NEPA remains binding unless Congress unmistakably directs otherwise — something Section 3031 plainly does not do.

**4.25.** The proviso also fragments the project into artificial phases, treating bridge removal, estuary re-engineering, and lake management as if they were discrete actions. Both the Ninth Circuit and D.C. Circuit have rejected such segmentation. See *Save the Yaak Comm. v. Block*, 840 F.2d 714, 718 (9th Cir. 1988); *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 298 (D.C. Cir. 1987).

**4.26.** By mandating reliance on old studies and incomplete design work, the Legislature expressly directed DOE to proceed without updated analysis of water quality, sediment contamination, climate impacts, or alternatives — a clear violation of NEPA's "hard look" requirement. See *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1214 (9th Cir. 1998); *Sierra Club v. Watkins*, 808 F. Supp. 852, 866 (D.D.C. 1991).

**4.27.** The proviso contains no exemption from SEPA. Washington agencies remain bound by SEPA's requirement to conduct review for major state-funded projects, and Washington courts have invalidated actions undertaken without such review. *Booth v. City of Pasco*, 100 Wn.2d 150 (1983).

**4.28.** In parallel with Section 3031, DES and DOE executed **Letters of Intent (LOIs)** and interlocal agreements with municipalities and the Squaxin Island Tribe. These agreements lock in the "Estuary Alternative" as the preferred and only feasible outcome, and obligate participants to funding, design, and phasing commitments — all before any NEPA or SEPA documentation was prepared.

**4.29.** These LOIs foreclose meaningful consideration of alternatives and represent precisely the kind of **irreversible and irretrievable commitments of resources** condemned in *Metcalf v. Daley*, 214 F.3d 1135, 1143–45 (9th Cir. 2000). The D.C. Circuit's reasoning in *National Parks Conservation Ass'n v. Semonite*, 925 F.3d 500, 502 (D.C. Cir. 2019), underscores that NEPA forbids agencies from treating environmental analysis as a procedural formality once the substantive commitments have already been made.

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT                    **20**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC                    ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**4.30.** Defendants have deliberately structured these LOIs and agreements to downplay or segregate the Budd Inlet toxic sediment remediation, treating it as a separate track despite DES's prior admissions that remediation and restoration are inseparable. This segmentation both obscures cumulative impacts and undermines NEPA's purpose. See *Scientists' Inst.*, 481 F.2d at 1092 (agencies cannot evade NEPA by considering projects in isolation).

**4.31.** By binding themselves to a predetermined outcome through LOIs, scoping agreements, and Section 3031, Defendants have engaged in **pre-determination, scope limitation, and legislative fiat**, depriving NEPA and SEPA processes of their essential purpose — to ensure informed decision making and public participation before irrevocable commitments are made.

**4.32.** Defendants' actions — including NOAA's grant award, the stealth adoption of Section 3031 transferring control to DOE, and the execution of LOIs — unlawfully advance a Major Federal Action without the required NEPA or SEPA review. The courts have made clear that appropriations measures and budget provisos cannot serve as backdoor exemptions from NEPA. *Stop H-3 Ass'n v. Dole*, 870 F.2d at 1431; *Izaak Walton League*, 655 F.2d at 361–62; *D.C. Fed'n of*

*Civic Ass'ns v. Volpe*, 459 F.2d at 1246–47. These actions threaten imminent and irreparable harm to Plaintiff and the environment, and require declaratory and injunctive relief.

**4.33.** In 2024, DES submitted a pre-proposal to the National Coastal Resilience Fund (NCRF) seeking an additional **$1,000,000 in grant funds** and identifying more than **$50.7 million in matching contributions and related federal funding requests** to support expanded design and construction of the Deschutes Estuary Restoration Project.

**4.34.** The pre-proposal candidly admits that DES intends to **formally merge a new flood-protection berm project into the estuary restoration**, despite earlier representations that the berm was a separate undertaking. The document describes a berm along the eastern shoreline of the estuary, within Heritage Park, to be integrated with the estuary's "living shoreline" design. This merger materially alters the project's scope, footprint, and impacts, yet was never disclosed in the State's July 7, 2025 court filings.

**4.35.** DES's proposal seeks to leverage **multiple new federal grants** to support the expanded scope:

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

22
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

- **$11.9 million** from NOAA for Tribal Fish Passage and Barrier Removal,
- **$24.8 million** from NOAA's Transformational Habitat Restoration and Coastal Resilience program,
- **$5 million** from USDOT's RAISE program for bridge redesign and traffic modeling,
- In addition to existing appropriations from the Washington Legislature for design and permitting.

4.36. In total, DES's LOI documentation discloses an intent to secure nearly **$50.7 million in additional federal and state funds** to advance expanded design and construction phases. These commitments contradict prior assurances that only "conceptual design" had been funded and that state involvement was minimal.

4.37. The merger of the berm project into the estuary restoration represents a **major substantive alteration**. The berm would fundamentally change the hydrology, shoreline morphology, and flood retention dynamics of downtown Olympia. It also introduces new environmental trade-offs, including impacts on public parklands, aesthetics, and cultural resources. Yet these major additions were never subjected to a Supplemental EIS or even disclosed as part of NEPA scoping.

4.38. By contrast, in public communications and litigation filings, DES and the State Defendants downplayed or omitted any mention of these expanded funding requests, the proposed berm merger, or the material changes to the

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**23**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

project's design. This omission deprived the Court, federal partners, and the public of the opportunity to evaluate the true scope of the undertaking.

**4.39.** NEPA does not permit agencies to **piecemeal or conceal project expansions** in this manner. Once new funding, new infrastructure (such as the berm), or new project elements are introduced, a Supplemental EIS is required. See *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 371–74 (1989); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 558 (9th Cir. 2000). By failing to disclose the merged berm project and the massive new federal funding requests, DES has ensured that the NEPA analysis is incomplete, misleading, and legally inadequate.

**4.40.** These omissions reinforce the broader pattern of misrepresentation and concealment already pleaded. DES has portrayed the project as limited, conceptual, or primarily tribal-led, when in fact it has sought tens of millions of dollars in new federal and state funding for an expanded, merged project of far greater scope and impact. This misrepresentation is material because it misled decisionmakers and the public into believing that NEPA review was complete or unnecessary, when in reality the project footprint, design, and funding commitments have fundamentally changed.

**4.41.** On July 7, 2025, the Washington State Defendants filed a Joinder in support of the Federal Defendants' Motion to Dismiss in this action. That filing contained material misstatements and omissions about the State's role, funding control, and scope commitments for the Deschutes Estuary Project.

**4.42.** The Joinder represented to this Court that the NOAA award was "between NOAA and the Squaxin Tribe, not the State," and that the State was "not a party" to the award.

**4.43.** In reality, the NOAA award of $6,437,390 designated DES as the **Primary Applicant**, with DES controlling and obligating approximately $5.9 million of the award. The Tribe's direct and indirect share was approximately $533,000. DES's fiscal role was material and central.

**4.44.** The Joinder further asserted that only "conceptual design" had been funded, suggesting that no binding commitments or harm could arise.

**4.45.** In fact, DES's own Budget Narrative reflected binding, multi-year commitments: ≈$1.153M for 30% design, ≈$3.0M for 60% design, ≈$500,000 for GC/CM onboarding, ≈$89,595 for a grant administrator, and additional funding for

permitting, outreach, and communications. These were substantive milestones, not mere "conceptual sketches."

**4.46.** The Joinder omitted the critical circumstance that **effective July 1, 2025**—six days earlier—Section 3031 of the 2025–26 Capital Budget had transferred lead-agency control from DES to Ecology and dictated project elements and timelines. This legislative fiat materially altered governance, scope, and timing, yet was withheld from the Court.

**4.47.** The Joinder also omitted DES's concurrent submission of Letters of Intent (LOIs) seeking ≈$50.7 million in additional federal and state funds, including funds for a new flood-protection berm project to be merged with the estuary restoration.

**4.48.** These omissions created the false impression that the State's role was peripheral, that expenditures were tentative, and that no imminent commitments existed—when in reality DES and Ecology were spending the majority of federal funds, locking in project scope, and merging additional projects.

**4.49.** NEPA does not permit agencies to misrepresent or conceal material facts in order to avoid or postpone review. *Scientists' Inst. for Pub. Info. v. AEC*,

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

26
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

481 F.2d 1079, 1092 (D.C. Cir. 1973); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). Courts have held that mislabeling or concealing binding commitments is incompatible with NEPA's requirement of full disclosure before irreversible commitments. *Metcalf v. Daley*, 214 F.3d 1135, 1144–45 (9th Cir. 2000).

**4.50.** By denying its principal role and concealing binding obligations, DES misled DOJ and this Court, undermined the integrity of the NEPA process, and deprived everyone of timely and lawful review.

## V. CAUSES OF ACTION
### 5.1 NEPA-APA Claim

**5.1.1** Plaintiff re-alleges and incorporates by reference the allegations of ¶¶1.1 through 4.50, together with Appendix A.

**5.1.2** This cause of action arises under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

**5.1.3** Defendants have taken major federal actions significantly affecting the quality of the human environment without preparing an Environmental Impact Statement (EIS) or supplementing existing analysis as required by NEPA.

**5.1.4** Defendants NOAA and ACOE have failed to ensure that NEPA review was conducted before awarding and obligating federal funds for the Deschutes Estuary Restoration Project, including the $6,437,390 NOAA award that committed resources to design, permitting, and staffing.

**5.1.5** Defendants DES and DOE, as the primary fiscal and operational actors, have obligated federal and state funds, entered into binding agreements, and predetermined outcomes before any NEPA review occurred, thereby rendering NEPA analysis a post hoc formality rather than a meaningful prerequisite.

**5.1.6** By proceeding in this manner, Defendants have violated NEPA and the APA. NEPA requires federal agencies to take a "hard look" at environmental consequences before making irretrievable commitments of resources. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

**5.1.7** The APA prohibits agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**28**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

Federal Defendants' award of funds and failure to ensure NEPA compliance is arbitrary and capricious, and the State Defendants' commitments of resources prior to review violate the procedural integrity of NEPA.

**5.1.8** Plaintiff has suffered procedural and informational injury, as well as environmental injury to his interests in the Deschutes Estuary and Budd Inlet, as a direct and proximate result of Defendants' unlawful actions.

**5.1.9** Plaintiff is entitled to relief declaring Defendants' actions unlawful, setting aside approvals made without NEPA review, and enjoining further commitments until NEPA compliance is achieved.

## V.2 CLAIM TWO NEPA
### Violation through Legislative Proviso

**5.2.1** Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

**5.2.2** Section 3031 of the Washington State 2025–26 Capital Budget (SB 5195) appropriates $14.75 million to DOE to implement a phased estuary restoration design and lake management plan. The proviso directs DOE to rely on

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

29
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

past reports and studies rather than conducting new comprehensive environmental review.

**5.2.3** By appropriating funds and dictating project elements, Defendants have unlawfully predetermined outcomes before conducting the required review, in violation of NEPA and SEPA. *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000).

**5.2.4** Section 3031 fragments review by isolating bridge removal, dredging, and estuary construction from the larger project, contrary to *Kleppe v. Sierra Club*, 427 U.S. 390 (1976), *Save the Yaak Comm. v. Block*, 840 F.2d 714 (9th Cir. 1988), and *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294 (D.C. Cir. 1987).

**5.2.5** Reliance on outdated studies fails the hard look requirement. *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208 (9th Cir. 1998); *Sierra Club v. Watkins*, 808 F. Supp. 852, 866 (D.D.C. 1991).

**5.2.6** Federal funding and permits (Army Corps CWA § 404, ESA consultation, EPA approvals) ensure NEPA applicability. *Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986).

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**30**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**5.2.7** SEPA independently requires review for state-funded projects unless exempted. *Booth v. City of Pasco*, 100 Wn.2d 150 (1983). Section 3031 contains no exemption.

**5.2.8** By advancing the project under Section 3031 without NEPA/SEPA review, Defendants have acted unlawfully.

**5.2.9 Prayer for Relief:** Plaintiff requests that the Court declare Section 3031 void and unlawful to the extent it authorizes or directs implementation of the Capitol Lake–Deschutes Estuary Project without prior NEPA review, and enjoin Defendants from proceeding until such review is complete.


### V.3 CLAIM THREE
### Declaratory Judgment Claim (28 U.S.C. §§ 2201–2202)

**5.3.1** Plaintiff re-alleges and incorporates by reference the foregoing paragraphs.

**5.3.2** An actual, ripe, and justiciable controversy exists between Plaintiff and Defendants concerning the lawfulness of Defendants' actions under NEPA, SEPA, and the APA.

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

31
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

**5.3.3** Plaintiff contends that Defendants have unlawfully advanced and committed resources to the Deschutes Estuary Restoration Project without conducting legally required environmental review. Defendants deny these allegations and assert that Plaintiff is not entitled to relief.

**5.3.4** This adversity establishes a genuine "case or controversy" under Article III of the U.S. Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007).

**5.3.5** Plaintiff has standing to bring this claim. He has suffered procedural injury through the denial of information and participation guaranteed by NEPA and SEPA, as well as concrete environmental injury to his aesthetic, recreational, and environmental interests in the Deschutes Estuary and Budd Inlet. These injuries are traceable to Defendants' unlawful actions and redressable by the Court.

**5.3.6** A declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and will terminate or substantially narrow the controversy between the parties. See *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).

**5.3.7** Declaratory relief is particularly appropriate here, where Defendants' misrepresentations and concealments have obscured the true scope of federal involvement, created bureaucratic inertia, and threatened to foreclose meaningful judicial review unless this Court intervenes.

**5.3.8 Prayer for Relief** Plaintiff requests that the Court enter judgment declaring that Defendants' actions in advancing the Capitol Lake–Deschutes Estuary Project without NEPA/SEPA compliance are unlawful, that Plaintiff's rights under NEPA and SEPA have been violated, and that further commitments or obligations are barred unless and until lawful review is completed.

### V.4. CLAIM FOUR Violation of NEPA and APA Through Misrepresentation and Concealment

**5.4.1** Plaintiff re-alleges and incorporates by reference the foregoing paragraphs, including ¶¶4.41–4.50 and Appendix A.

**5.4.2** On July 7, 2025, the Washington State Defendants filed a Joinder in support of the Federal Defendants' Motion to Dismiss. In that filing, the State materially misrepresented and concealed critical facts regarding its role, its control

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

33
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

of federal funds, and substantive commitments undertaken under the NOAA award.

**5.4.3** The Joinder falsely represented that the NOAA grant was "between NOAA and the Squaxin Tribe, not the State," and that the State was "not a party" to the grant. In reality, the NOAA award designated DES as the **Primary Applicant**, with DES controlling and obligating approximately $5.9 million of the $6.437 million award.

**5.4.4** The Joinder further asserted that only "conceptual design" was funded. In truth, the State's Budget Narrative documented binding, multi-year commitments: ≈$1.153M for 30% design, ≈$3M for 60% design, ≈$500,000 for GC/CM onboarding, ≈$89,595 for staffing, and additional funds for permitting and outreach. These are substantive obligations that create bureaucratic inertia and foreclose alternatives prior to NEPA review.

**5.4.5** The Joinder omitted the July 1, 2025 budget proviso (SB 5195 § 3031) that transferred lead-agency responsibility to DOE and dictated project scope and timelines, a material change with direct NEPA implications.

**5.4.6** The Joinder also omitted DES's contemporaneous LOIs seeking ≈$50.7 million in additional federal and state funding and merging the flood-protection berm into the estuary restoration project—an expansion requiring supplemental NEPA review.

**5.4.7** These misstatements and omissions are material. They deprived DOJ, the Court, and the public of full and accurate information about who was controlling funds, what commitments were being made, and how the project's scope had changed.

**5.4.8** NEPA requires full and candid disclosure at the earliest stage, so that environmental impacts are assessed before irreversible commitments are made. *Scientists' Inst. for Pub. Info. v. AEC*, 481 F.2d 1079, 1092 (D.C. Cir. 1973); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). By concealing material facts and misrepresenting the scope of commitments, Defendants violated NEPA's core mandate.

**5.4.9** The APA further prohibits agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2) (A). Federal reliance on materially misleading representations, and state

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

35
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

submission of incomplete and inaccurate filings to a federal court, fall within the APA's prohibition.

**5.4.10** Plaintiff has suffered procedural and informational injuries as a result of these misrepresentations and omissions, including the denial of timely participation in NEPA review and the risk of environmental harm to the Deschutes Estuary and Budd Inlet.

**5.4.11 Prayer for Relief:** Plaintiff requests that the Court declare Defendants' July 7, 2025 Joinder materially misleading and unlawful to the extent it concealed or misstated facts bearing on NEPA compliance; direct Defendants to file corrective disclosures and supplement the administrative record; and enjoin Defendants from further commitments or obligations until a full and honest NEPA review is completed.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1. **Declaratory Relief under NEPA and APA (Claim I):**

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

**36**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

Declare that Defendants have violated NEPA and the APA by taking major federal actions without preparing a required Environmental Impact Statement, by failing to supplement outdated or incomplete analyses, and by committing resources and predetermining outcomes before NEPA review.

2. **Declaratory Relief under NEPA and SEPA (Claim II):**

Declare that Section 3031 of the 2025–26 Capital Budget (SB 5195) is void and unlawful to the extent it authorizes or directs implementation of the Capitol Lake–Deschutes Estuary Project without prior NEPA and SEPA review, and declare that Defendants' reliance on outdated studies and artificial segmentation is contrary to law.

3.**Declaratory Relief under the Declaratory Judgments Act (Claim III)**

Declare that an actual controversy exists between Plaintiff and Defendants; that Plaintiff has standing; that Defendants' actions unlawfully impair Plaintiff's rights to environmental review, information, and participation under NEPA and SEPA; and that

further commitments or obligations are barred unless and until lawful

review is completed.

**Declaratory Relief under NEPA/APA for Misrepresentation (Claim IV):**

Declare that Defendants' July 7, 2025 Joinder was materially

misleading to the extent it denied DES's fiscal role, concealed binding

commitments, omitted the July 1 transfer and LOI scope expansion,

and mischaracterized substantive obligations as "conceptual design."

**Injunctive Relief:**

a. Enjoin Defendants from obligating, expending, or committing

further federal or state funds until full NEPA/SEPA compliance is

achieved;

b. Enjoin Defendants from implementing or relying on Section 3031

absent NEPA/SEPA compliance;

c. Require Defendants to prepare and circulate a comprehensive, joint

EIS addressing both estuary restoration and Budd Inlet sediment

remediation;

d. Require the State Defendants to file **corrective disclosures**

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**38**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

identifying DES/Ecology's roles, funding control, design milestones, and the July 1 proviso transfer, and to **supplement the administrative record** with the Budget Narrative, LOI/berm documents, and any other withheld materials.

3. **Vacatur and Set-Aside:**

Set aside the NOAA award, approvals, and commitments made in violation of NEPA and APA, pursuant to 5 U.S.C. § 706(2).

4. **Fees and Costs:**

Award Plaintiff reasonable fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable provisions of law.

5. **Further Relief:**

Grant such other and further relief as this Court deems just, proper, and equitable, including any additional declaratory or injunctive relief necessary to ensure that Defendants comply fully with NEPA, SEPA, and the APA.

PLAINTIFF'S 2nd
AMENDED NEPA
COMPLAINT

39
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

I certify the facts in the foregoing Verified Complaint to be correct and true under penalty of Law. Respectfully submitted this Day of September 8th, 2025, from Olympia, Washington.

*s/Arthur West*
**ARTHUR WEST**

## CERTIFICATE OF SERVICE

On or before September 8th, 2025, I served a copy of this document and West's Motion to Amend electronically on Counsel for respondents. I certify the foregoing to be correct and true. Done this day of September 8th, 2025 in Olympia, Washington.

*S/Arthur West*
**ARTHUR WEST**

## Appendix A – Misrepresentation Table

| Joinder Statement (July 7, 2025) | Record Reality / Exhibits | NEPA Significance |
|---|---|---|
| "The NOAA grant Plaintiff is challenging is between NOAA and the Squaxin Tribe, not the State." (Joinder at 2–3) | NOAA Award NA24NMFX463C0024 lists **DES as Primary Applicant**; Budget Narrative shows DES controls ≈$5.9M; Tribe receives ≈$0.53M. **Exhibits:** NOAA Award Docs; State Budget Narrative | Conceals DES's role as principal fiscal actor and primary driver of scope decisions. |
| "The State Defendants are not a party to the NOAA grant and no claims or relief sought … would apply to them." (Joinder at 3) | DES is Primary Applicant; State appropriations (≈$23M) also integrated; DES executes LOIs. **Exhibits:** NOAA Award Docs; LOIs; SB 5195 §3031 (Budget Proviso) | Misstates jurisdictional posture; relief must run to actual spenders/steerers. |
| "Only conceptual design has been funded … Plaintiff cannot | Budget Narrative: ≈$1.153M for 30% design (2024); ≈$3M for 60% design (2025–26); ≈$500k for | Mischaracterizes substantive multi-year commitments as |

PLAINTIFF'S 2nd AMENDED NEPA COMPLAINT

**41**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501

| Joinder Statement (July 7, 2025) | Record Reality / Exhibits | NEPA Significance |
|---|---|---|
| have suffered cognizable harm." (Joinder at 4) | GC/CM onboarding; ≈$89,595 for staff; additional permitting and outreach. **Exhibit:** Budget Narrative | "conceptual." Creates unlawful bureaucratic inertia foreclosing alternatives before NEPA. |
| [Omission: July 1, 2025 legislative transfer to Ecology] | SB 5195 §3031 transferred lead-agency authority to Ecology; dictated scope/timeline. **Exhibit:** SB 5195 §3031 (Capital Budget Proviso) | Concealed material governance shift. Legislative fiat cannot bypass NEPA. |
| [Omission: ≈$50.7M LOI expansion; merged berm project] | LOI shows requests for NOAA & USDOT funds; new flood-protection berm merged into estuary project. **Exhibit:** LOI Final PDF | Material scope expansion omitted; triggers duty to supplement NEPA analysis. |

PLAINTIFF'S 2ⁿᵈ
AMENDED NEPA
COMPLAINT

**42**
Awestaa@Gmail.com
No. 1:24-cv-03143 CRC

ARTHUR S. WEST
120 State Ave NE #1497
Olympia, WA. 98501